JOSHUA D. KIENITZ, Bar No. 244903
jkienitz@littler.com
LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, California 94597
Telephone: 925.932.2468
Fax No.: 925.946.9809

COURTNEY CHAMBERS, Bar No. 312011
cchambers@littler.com
HARMAN S. DEOL, Bar No. 346547
hdeol@littler.com
LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, California 94104
Telephone: 415.433.1940
Fax No.: 415.399.8490

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIAN OGANS, an individual, on behalf of himself, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY, a California corporation; and DOES 1-50, Inclusive,<br><br>Defendant. | Case No.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. SECTIONS 1332 AND 1441(b)**<br><br>[Sacramento Superior Court Case No. 23CV008944] |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF DORIAN OGANS AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant PACIFIC GAS AND ELECTRIC COMPANY, AND DOES 1-50 ("Defendant" or "PG&E"), contemporaneously with the filing of this Notice, are effecting the removal of the above-referenced action from the Superior Court of the State of California, County of Sacramento, to the United States District Court for the Eastern District of California.

Removal is proper based on 29 U.S.C. § 185(a).  This action is removed pursuant to the procedures found in 28 U.S.C. §§ 1441 and 1446, and removal jurisdiction is based on 28 U.S.C. § 1331.  Pursuant to 28 U.S.C. § 1446(d), Defendant will also file a copy of this Notice of Removal with the Sacramento Superior Court.

## I.   PROCEDURAL BACKGROUND

On September 20, 2023, Plaintiff Dorian Ogans ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of Sacramento, which is captioned as follows: <u>Dorian Ogans, individually, and on behalf of others similarly situated, v. Pacific Gas and Electric Company, A California Corporation, and Does 1 through 50, inclusive,</u> Case No. 23CV008944.  ("Complaint" or "Compl.")  The Complaint contains eight (8) causes of action, alleging: (1) Unfair Competition (Cal. Bus. & Prof. Code §§ 17200, *et seq*.); (2) Failure to Pay Minimum Wages (§§Cal. Lab. Code § 1194, 1197, and 1197.1); (3) Failure to pay Overtime Wages (Cal. Lab. Code §§ 204, 510, 1194 and 1198); (4) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7 and 512); (5) Failure to Provide Rest Breaks (Cal. Lab. Code § § 226.7 and 512); (5) Waiting Time Penalties (Cal. Lab. Code § 201, *et seq*.); Failure to Provide Wage Statements (Cal. Lab. Code § 226); and (8) Failure to Reimburse Necessary Business Expenses (Cal. Lab. Code § 2802 ).

True and correct copies of the Summons, Complaint, and Proof(s) of Service are attached to the supporting Declaration of Joshua D. Kienitz ["Kienitz Decl."] as **Exhibit 1**.  All other filings, orders and/or papers in the superior court action, to Defendant's knowledge, are attached to Kienitz Decl. as **Exhibit 2**.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT        2        CASE NO.

Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT        2.        CASE NO.

On October 16, 2023, Plaintiff's counsel agreed to a 15-day extension for Defendant to respond to Plaintiff's Complaint. (Kienitz Decl., **Exhibit 3**.) As its responsive pleading, and subject to meet and confer discussions with Plaintiff's counsel that may eliminate the need for such a motion, Defendant intends to file a motion to dismiss under Rule 12(b)(6), within the timeline resulting from Fed. R. Civ. P. 81(c)(2)(C) and the above-referenced 15-day extension.

As of the date of this Notice of Removal, no other parties have been named or served with the Summons and Complaint, to Defendant's knowledge.

## II.    REMOVAL JURISDICTION

This Court has jurisdiction because a federal question exists under Section 301 of the Labor Management Relations Act ("LMRA"), which provides:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this [Act], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a) (hereinafter, "Section 301").

Section 301 preemption and jurisdiction apply, because the Complaint includes claims that can only be brought as contractual claims under a collective bargaining agreement ("CBA") as a result of the application of express collective bargaining agreements exemptions in California Labor Code Sections 204, 245.5(a)(1), 512(e) and 514. Section 301 also applies because Plaintiff asserts he is entitled to relief that is controlled by the CBA and makes claims of which the resolution require interpretation of the CBA.

If any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c), because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy.

## III.    REMOVAL PROCEDURE

### A.    Venue Is Proper in This District.

Plaintiff filed this action in the Superior Court of California, County of Sacramento. Therefore, pursuant to 28 U.S.C. §§ 84(a), 1391, and 1441(a), venue properly lies in the United States District

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT                     3                     CASE NO.

Court for the Northern District of California.

### B. This Removal Is Timely Made Within Thirty Days of Service of the Complaint.

Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because Defendant filed it within thirty (30) days after the service of the Summons and Complaint filed in the State Court Action. Service occurred on October 3, 2023. (Kienitz Decl., **Exhibit 1**.) This Notice of Removal is timely filed within thirty (30) days thereafter. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48, 354 (1999) (holding removal period is triggered by completed service of process).

### C. The Parties

PG&E is a company engaged in an industry affecting commerce within the meaning of the National Labor Relations Act (the "NLRA"). 29 U.S.C. §§ 152(2), (6), (7), and 185(a). The International Brotherhood of Electrical Workers, Local 1245 ("IBEW" or the "Union") is a labor organization under the NLRA and LMRA. 29 U.S.C. §§ 152(5) and 185(a). PG&E and IBEW, at all relevant times, have been parties to a collective bargaining agreement ("CBA"). A true and correct copy of the CBA in effect during Plaintiff's employment, along with the agreements to extend the CBA from 2016 through 2025, and the previous Exhibit Fs outlining Plaintiff's wages from 2018-2021 are attached to the Ledbetter declaration ("Ledbetter Decl.") as **Exhibit 4**. (*See also* Defendant's Request for Judicial Notice [RJN] at ¶ 1.)

At all relevant times during his employment with PG&E, Plaintiff was a union–represented employee and part of the bargaining unit represented by the Union and, therefore, subject to the CBA. (Ledbetter Decl., at ¶¶ 3,7.)

## IV. FACTUAL BACKGROUND

### A. Plaintiff's Employment

PG&E employed Plaintiff as a Service Representative I from 2014 to 2020 and a Service Representative II from 2020 to 2022. (Ledbetter Decl., ¶ 7.). In this position, he was classified within the IBEW-represented Clerical Unit and his employment was governed by the CBA. (Ledbetter Decl., ¶ 3.) In his role as a Service Representative II, Plaintiff's base wage in 2022 under the CBA was $47.23. (*Id.* at ¶ 8.) Plaintiff's base wage rate in 2021 under the CBA was $45.52. (*Id.* at ¶ 9.) Plaintiff's base wage rate in 2020 under the CBA was $ 44.19. (*Id.* at ¶ 10.) Plaintiff's base wage rate

in 2019 under the CBA was $33.29. (*Id.* at ¶ 11.) Plaintiff's base wage rate in 2018 under the CBA was $26.88 (*Id.* at ¶ 12.) At all relevant times, Plaintiff's wage rate under the CBA was in excess of 130% of the California minimum wage.

      **B.**      **Relevant Collective Bargaining Agreement Provisions**

.The CBA applicable during all relevant times of Plaintiff's employment was in effect from January 1, 2016 to December 31, 2019 and was extended via two contract extensions from January 1, 2020 to December 31, 2021 and then again from January 1, 2022 to December 31, 2025. (Ledbetter Decl., at ¶ 3.) The provisions of the CBA relevant to this Removal include the following:

**1. Wage Rates and Overtime**

> **TITLE 13 WAGES, Section 13.1 WAGE RATES IN EXHIBIT F**
> Attached hereto, made a part hereof, and marked Exhibit F, is a schedule of wage rates applicable to employees covered by this Agreement.

(*Id.* at **Exhibit 4**, CBA p. 30.)

> **TITLE 13. WAGES, Section 13.2 PAYDAY**
>
> (a) Wages shall be paid at biweekly intervals on Fridays for a two weeks' payroll period ending not less than four nor more than ten days prior to the pay date, provided that if the regular pay date falls on a holiday payment shall be made on the preceding workday.

(*Id.* at **Exhibit 4**, CBA p. 30.)

> **TITLE 12. OVERTIME, Section 12.1 DEFINITION** Overtime is defined as (a) time worked in excess of 40 hours in a workweek, (b) time worked in excess of eight hours on a workday, (c) time worked on a non-workday, (d) time worked on a holiday as provided for in Title 103, and (e) time worked outside of regular work hours on a workday. Company shall not be required to pay overtime compensation more than once for any single period of time worked. Overtime shall be cumulated each day and shall be compensated to the one-quarter hour.

(*Id.* at **Exhibit 4**, CBA pp. 27.)

> **TITLE 12 OVERTIME, Section 12.2 RATE AND DOUBLE TIME**
>
> (a) In general, overtime compensation at the rate of one and one-half times the straight rate of pay shall be paid to employees for overtime as defined in Items (a), (b), (c), (d) and (e) of Section 208.1; except that
>
> (b) the time worked in excess of 12 consecutive hours and continuing until the employee is dismissed from such work shall be paid at the rate of two times the employee's straight rate of pay, or

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT      5      CASE NO.

     (c) if, following an employee's dismissal from work or on an employee's non-workday or holiday which the employee is scheduled to have off, the employee is called out for work, the employee shall be paid at two times the employee's straight rate of pay for all work performed outside the employee's regular work hours or on a non-workday or holiday which the employee is scheduled to have off. (Amended 1-1-88)

     (d) The time worked in excess of eight hours on the employee's second of two scheduled days off counting from the first day of the basic workweek shall be paid at the rate of two times the employee's straight rate of pay provided such employee has performed work on the first scheduled day off. Employees scheduled to have four consecutive days shall be entitled, in addition to the above, to pay at the rate of two times the employee's straight rate of pay for the time worked in excess of eight hours on the fourth scheduled day off, provided that such employee has also performed work on the third scheduled day off. For employees on an alternative work schedule: If an employee performs work on any non-workday, the employee will receive double time after eight hours worked on the next day, provided that day is also a non-workday. Double-time after eight hours worked will continue until such time as the employee performs no work on a non-workday or a regular workday occurs. See examples in Letter Agreement 04-10. (Amended 7-25-12)

     (e) For purposes of this Section, an employee's 'regular hours of work' shall be the same on a non-workday as those regularly scheduled for such employee on a workday.

(*Id.* at **Exhibit 4**, CBA p. 28.)

**PREVIOUS EXHIBIT F – WAGES 2018 - 2019**

| SAP Job Code | Pay Scale Code | Classification | Progression | 1/1/2018 | 1/1/2019 |
|---|---|---|---|---|---|
| 50356343 | 2604 | Service Representative I | End 18 Mo. | $ 26.88 | $ 32.24 |
| 50356342 | 2604 | Service Representative I | End 3 Yr. | $ 32.24 | $ 33.29 |
| 50356343 | 2604 | Service Representative II | | $ 41.55 | $ 42.90 |

(*Id.* at **Exhibit 4**, previous exhibit F p. 171.)

**Previous Exhibit F – Wages 2020-2021**

| SAP Job Code | Pay Scale Code | Classification | Progression | 1/1/2020 | 1/1/2021 |
|---|---|---|---|---|---|
| 50356343 | 2604 | Service Representative II | | $ 44.19 | $ 45.52 |

(*Id.* at **Exhibit 4**, CBA p. 176.)

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT    6    CASE NO.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard

**EXHIBIT F – 2022 WAGES**

| SAP Job Code | Pay Scale Code | Classification | Progression | 1/1/2022 |
|---|---|---|---|---|
| 50356343 | 2604 | Service Representative II | | $ 47.23 |

(*Id.* at **Exhibit 4**, CBA p. 130.)

### 2. Meal Periods

**TITLE 10. HOURS OF WORK, Section 10.4 REGULAR HOURS OF WORK,** In general, and except as otherwise provided herein, the regular hours of work shall be from 8:00 a.m. to 5:00 p.m. with not more than one hour off for lunch. The lunch period shall be scheduled between 11:00 a.m. and 2:00 p.m. and when scheduled for less than one hour, adjustment to correspond thereto shall be made in hours of work.

(*Id.* at **Exhibit 4**, CBA pp. 25)

### 3. Grievance

**TITLE 9. GRIEVANCE PROCEDURE, Section 9.1 STATEMENT OF INTENT – NOTICE** … It is the intent of both Company and Union that the processing of disputes through the grievance procedure will give meaning and content to the Collective Bargaining Agreement.

The parties are in agreement with the policy expressed in the body of our nation's labor laws that the mutual resolution of disputes through a collectively bargained grievance procedure is the hallmark of competent industrial self-government. Therefore, apart from those matters that the parties have specifically excluded by way of Section 9.2, all disagreements shall be resolved within the scope of the grievance procedure.

**TITLE 9. GRIEVANCE, Section 9.2 GRIEVANCE SUBJECTS** Disputes involving the following enumerated subjects shall be determined by the grievance procedures established herein:

(a) Interpretation or application of any of the terms of this Agreement, including exhibits thereto, letters of agreement, and formal interpretations and clarifications executed by Company and Union.

(b) Discharge, demotion, suspension or discipline of an individual employee.

(c) Disputes as to whether a matter is proper subject for the grievance procedure.

(*Id.* at **Exhibit 4**, CBA p. 16-17.)

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT    7    CASE NO.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard

**TITLE 9 GRIEVANCE EPROCEDURE STEP FIVE (Title Amended 1-1-00) ARBITRATION**

**A. TRIPARTITE BOARD** Either Company or Union may request, within the time limits provided in the foregoing steps, that a grievance which is not settled at one of the steps provided above be submitted to arbitration. An Arbitration Board shall be appointed on each occasion that a grievance is timely submitted to arbitration pursuant to the foregoing provisions of this Title. The board shall be composed of two members appointed by Company, two members appointed by Union, and a fifth member appointed pursuant to the procedure set forth in the following Subsection B. Such fifth member shall act as Chairman of the Arbitration Board and conduct hearings and render a decision in accordance with the appropriate Submission Agreement.

**B. SELECTION PROCEDURE** The parties to an arbitration proceeding will make a good faith effort to mutually agree to the selection of the Chairman. If they cannot, each party shall nominate two candidates from the panel established by Company and Union, Subsection C. If the parties are still unable to agree upon the selection of a Chairman, then the Chairman shall be chosen by lot from the panel names submitted.

**C. PANEL OF ARBITRATORS** A panel of not more than ten arbitrators shall be established and renewed annually by the Company and the Union on January 1 of that year. Each party shall have the right to name five panelists who will remain on the panel during the calendar year

(*Id.* at **Exhibit 4**, CBA p. 22.)

**4. Expenses**

**Title 15 EXPENSES, 15.1 MOVING EXPENSES** An employee who is required to change his/her residence from one locality to another for Company's convenience shall be reimbursed by Company for any expense the employee incurs thereby in moving his/her household goods, but no reimbursement shall be made by Company for expenses incurred by an employee in connection with a transfer which is made at the employee's request. (Amended 1-1-91)

**Title 15 EXPENSES, 15.2 TRANSPORTATION** If it becomes necessary for an employee to perform temporary work away from his/her headquarters, Company shall provide transportation or shall reimburse the employee for the cost of using public transportation, provided, however, that if solely for Company's convenience an employee uses his/her personal automobile, Company shall reimburse the employee therefor to the maximum non-taxable vehicle mileage allowance allowed by the IRS, except that an employee covered under Standard Practice 552.3 will continue to receive reimbursement as provided therein. However, the application of the DMA shall not be reduced without agreement with Union. (Amended 1-1-00)

**Title 15 EXPENSES, 15.3 INTERVIEWS** An employee, who at Company request, is required to travel for the purpose of attending an

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT    8    CASE NO.

interview shall be reimbursed by Company for all reasonable costs incurred, including travel time during regular work hours on a workday, transportation or mileage rates, and board and lodging when authorized in advance. If at all possible, interviews and travel time will be scheduled on workdays during regular work hours. (Amended 1-1-80)

(*Id.* at **Exhibit 4**, CBA p. 35-36.)

**5. Sick Leave**

**Title 7 Sick Leave, 7.1 QUALIFICATION AND RATE OF COMPENSATION After** completing one year of Service and for each year of Service thereafter, a regular employee shall be allowed sick leave with pay for a total of 80 hours per calendar year. A regular part-time or intermittent employee shall be allowed sick leave with pay for such portion of 80 hours per calendar year as the ratio of straight-time hours worked in a year to 2,080 hours. Current sick leave will not be credited unless the employee first performs services in the new year. Employees with less than one year of service shall be eligible for California Paid Sick Leave as provided in Letter Agreement 21-08. (Amended 2-9-21)

**Title 7 Sick Leave, 7.2 ACCUMLATION,** A regular employee, in addition to the annual sick leave allowed under the provisions of Section 7.1, shall be allowed further sick leave with pay which shall not exceed the total of unused annual sick leave in the eight years immediately preceding. (Amended 1-1-91)

(*Id.* at **Exhibit 4**, CBA p. 9-11.)

**LETTER AGREEMENT NO. 21-08-PGE**

The Company and the Union have been in discussions about establishing a complete list of employee subgroups who receive 24 hours of paid sick leave in their first year of employment. This agreement adds additional subgroups eligible for 24 hours of paid sick leave and cancels and supersedes Letter Agreement 15-19: Regular (with less than one year of service), Intermittent (with less than one year of service) Probationary, Casual, Probationary Temporary Additional, Summer Hire, Probationary Intermittent, Outage, Temp Additional, Hiring Hall.

(*Id.* at **Exhibit 5,** *See also* Defendant's Request for Judicial Notice [RJN] at ¶ 2.)

**LETTER AGREEMENT NO. 21-01-01-PGE**

Consistent with current Company policy, during the COVID-19 pandemic, eligible employees who have been approved to work remotely will be reimbursed up to $45 for personal cell phone and up to $35 for home internet used for Company business.

(*Id.* at **Exhibit 6,** *See also* Defendant's Request for Judicial Notice [RJN] at ¶ 2.)

**LETTER AGREEMENT NO. 22-22-PGE**

The Company will provide Hybrid employees reimbursement for reasonable and necessary business expenses as approved by the Company, including up to $35 per month for internet costs. In the event there is an update to the Company's internet reimbursement policy which results in an increase to the amount to Hybrid employees for internet service, the Company agrees to pay the increased reimbursement amount.

(*Id.* at **Exhibit 7, Exhibit 8, and Exhibit 9;** *See also* Defendant's Request for Judicial Notice [RJN] at ¶ 2)

This is a non-exhaustive list of the CBA provisions and agreements that create and/or govern the rights and privileges that Plaintiff has placed at issue in the Complaint. One could review every job classification, and every calendar year, in the wage appendix to the CBA (Ledbetter Decl., at Ex 4. CBA at pp 129 - 134), and it is apparent that all contractual rates of pay are in excess of 130% of the California minimum wage each year.

## V.   LEGAL DISCUSSION

Plaintiff pleads eight causes of action, all styled as state law claims involving violations of wage and hour provisions of the California Labor Code, and Unfair Competition Law ("UCL"). Plaintiff's overtime and meal break claims are preempted under Section 301 because such claims are necessarily contractual claims under the CBA; California state law does not apply to such claims because of an express exemption in the Labor Code. Plaintiff's Labor Code Section 204 allegations, which are made in support of both his Second (minimum wage) and Third (overtime) Causes of Action, are preempted for the same reason. Plaintiff's derivative claims (for waiting time penalties under Labor Code Section 203, inaccurate wage statements, and restitution under the UCL), are preempted under Section 301 because such claims rise or fall based on the underlying substantive (and preempted) overtime and meal break claims. Plaintiff's minimum wage claim is also preempted by Section 301 because the resolution of such claims requires interpretation of the CBA; or, in the alternative, because the Court has supplemental jurisdiction over these claims, which form part of the same case or controversy as Plaintiff's preempted claims. Thus, this action is preempted by Section

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT     10     CASE NO.

301, notwithstanding that the Complaint does not mention the CBA.

A. The Section 301 Preemption Analysis – Legal Standard

Section 301 completely preempts all claims that are based on, or require the interpretation of, a collective bargaining agreement. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368–69 (1990); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–11 (1985); *Associated Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers*, 109 F.3d 1353, 1356–57 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements").

Section 301 preemption furthers two important federal policies. First, it ensures that the interpretation of collective bargaining agreements remains uniform and independent of state law. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962) (inconsistent interpretations would "inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements"). Second, the complete preemption doctrine gives effect to the parties' mutual promise to resolve disputes through the grievance-arbitration process and furthers the strong federal policy that labor disputes "remain[] firmly in the arbitral realm." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 411 (1988). This Court has subject matter jurisdiction over—and thus a defendant may properly remove—any ostensible state law claim preempted by Section 301. *Franchise Tax Board v. Construction Laborers*, 463 U.S. 1, 24 (1983); *Allis-Chalmers Corp.*, 471 U.S. at 220 (if preempted, the "claim must either be treated as a § 301 claim ... or dismissed").

<u>Step One</u>. Under the Section 301 preemption analysis, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (internal citations and quotations omitted). Under *Curtis*, where an asserted Labor Code or Wage Order claim is covered by an available CBA exemption – such that there exists no valid underlying state law claim – the Section 301 preemption inquiry is resolved at this first step. This is because, in the case of a state law meal break claim (for example), if Labor Code Section 512(a) does not apply (due to the application of the Labor Code Section 512(e)-(g) CBA exemption), any pleaded meal break claim is necessarily a contractual claim. *See, e.g., Giles v. Canus Corp.*, 2022 WL 3370793, *4-5 (N.D. Cal. Aug. 16, 2022) (applying *Curtis*).

<u>Step Two</u>.  If, and only if, there is no preemption found at the first step of the analysis, courts proceed to the second step of the Section 301 preemption analysis, which asks "whether a plaintiff's state law right is substantially dependent on analysis of the CBA." *Curtis*, 913 F.3d at 1153.  Under this second step, where there is no applicable CBA exemption, Section 301 preemption still applies if the resolution of a plaintiff's minimum wage claim (for example) requires interpretation of the CBA.  *See Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007, 1014-16 (C.D. Cal. Sep. 2, 2022) (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks through Article 27."); *Giles, supra,* 2022 WL 3370793, *6 (holding minimum wage claim preempted because resolving that claim would require an interpretation of terms "actual time worked" and "show-up pay" as used in the CBA).

Notably, whether Plaintiff's operative pleading mentions the CBA is not relevant to the Section 301 preemption analysis.  *Curtis*, 913 F.3d at 1152; *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 750 (S.D. Cal. 2021); *Mellon*, 2022 625 F. Supp. 3d 1007, 1012; *Ayon v. Zero Waste Sols., Inc*, 2021 WL 4065716, *3 (E.D. Cal. Sept. 7, 2021).

**B.    Plaintiff's Third Cause Of Action (Overtime) Is Preempted Under *Curtis* Step One.**

In Plaintiff's Third Cause of Action, Plaintiff asserts that "During the CLASS PERIOD, PLAINTIFF and CALIFORNIA CLASS Members were required by Defendant to work for DEFENDANT and were not paid for all the time they worked, including overtime work." (Compl., ¶ 99.)  However, Plaintiff has no valid state law overtime claim because the Labor Code Section 514 exemption applies.  Section 514 provides an overtime exemption where

> "an employee [is] covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

First, the CBA provides for a range of wages, hours, and working conditions.  (*See* provisions quoted in Sections IV.B.1, IV.B.2, *supra*.)

Second, the CBA provides premium wage rates for all overtime hours worked.  (*See* CBA Title

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT    12    CASE NO.

12.1 and 12.2.)

Third, the CBA provides hourly rates of pay well in excess of 30 percent above the then-current California minimum wage. (*See* Section IV.B.1, *supra*.) During Plaintiff's final year of employment, he earned a base wage rate of $47.23. (*Id.*)

Accordingly, the Section 514 overtime exemption, which has been construed and applied broadly by state and federal courts, clearly applies here. S*ee Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109 (2014) (where Section 514's requirements are met, an employer is only required to pay for overtime as defined by the collective bargaining agreement and Section 510 simply does not apply); *Curtis*, 913 F.3d at 1154-55 ("While section 510 establishes a default definition of overtime applicable to non-unionized employees, unionized employees 'have sought and received alternative wage protections through the collective bargaining process'") (*citing Vranish*; *quoting Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000)).

Where, as here, the Section 514 exemption applies to a union-represented plaintiff, the "right to overtime 'exists solely as a result of the CBA,' and therefore Plaintiff's Third Cause of Action is preempted under § 301." *Curtis*, 913 F.3d at 1154; *accord, e.g., Giles*, *supra,* 2022 WL 3370793, *4; *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, 2022 U.S. Dist. LEXIS 42113, *11 (C.D. Cal. Mar. 8, 2022); *Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, *4 (N.D. Cal. Jan. 18, 2022) (*citing Curtis*, 913 F.3d at 1153-55); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203-04 (C.D. Cal. 2015) (same).

Within his Third Cause of Action, Plaintiff alleges that PG&E violated Labor Code Section 204 by failing to timely pay its employees for all hours worked. (Compl., ¶ 96.) However, Labor Code Section 204 does not apply "when employees are covered by a collective bargaining agreement that provides different pay arrangements." Lab. Code § 204(c). Thus, as is the case with overtime, meal and rest break claims, California state law wage payment claims under Section 204 are waivable and negotiable as to a union represented employee. *Hall*, *supra*, 146 F. Supp. 3d at 1203-4 (holding Section 204 claim preempted under Section 301 where CBA contained its own pay timing rules). Here, Section 13.2 of the CBA requires *biweekly* wage payments. (*See* Section IV.B.1 *supra*). Thus, Plaintiff's Section 204 claim is preempted under Section 301. *Hall*, 146 F. Supp. 3d at 1203-04; *accord*

*Bradford v. Prof'l Tech. Sec. Servs.*, 2020 WL 2747767, *5 (N.D. Cal. May 27, 2020) ("Because the CBA here provides for a different pay arrangement than the statute, [plaintiff's] right to timely payment exists solely as a result for the CBA and is preempted."); *Ariola v. Raytheon CA Techs Corp* 2023 U.S. Dist. LEXIS 158377 *21-*25 (C.D. Cal., September 6, 2023) (finding that a bi-weekly pay arrangement is distinct from the section 204(a) requirement to make semi-monthly payments, and further holding that [Plaintiff's] claim under Section 204 was preempted).

### C. Plaintiff's Fourth Cause Of Action (Meal Breaks) Is Preempted Under *Curtis* Step One.

Plaintiff's Third Cause of Action alleges the failure to provide meal breaks under California law. However, Plaintiff has no valid state law meal break claim because the Labor Code Section 512(e) exemption applies. As is relevant here, the Section 512(e) exemption applies because Plaintiff:

(i) was employed by an electrical and gas corporation (*see* Labor Code Section 512(f)(4)); and

(ii) was covered by a CBA that

   (a) expressly provides for a range of wages, hours and working conditions (*see* Sections IV.B.1, IV.B.2, *supra*),

   (b) expressly provides for meal periods (*see* Section IV.B.2, *supra*)

   (c) provides final and binding arbitration of disputes concerning the CBA's meal period provisions (*see* Section IV.B.3, *supra*),

   (d) provides premium wage rates for all overtime hours worked (*see* Section IV.B.1, *supra*); and

   (e) provides a regular hourly rate of pay in excess of 30 above the California state minimum wage (*see* Section IV.B.1, *supra*.)

The meal break CBA exemption in Labor Code Section 512(e) has, like the Section 514 exemption, been construed broadly by the courts. In the seminal case, *Araquistain v. Pacific Gas & Electric Co.*, 229 Cal. App. 4th 227, 230, 237-38 (2014), the Court of Appeal (affirming the superior court's order), held that the Section 512(e) exemption was met where the underlying CBA (the very same CBA that applies to Plaintiff here) simply provided that "shift employees and other employees whose workday consists of eight consecutive hours shall be permitted to eat their meals during work

hours and shall not be allowed additional time therefore at Company expense" (i.e., even where the CBA did not provide a precise duration or timing for meal periods). Where the Section 512(e) exemption is met, the exempted-from state law provision (in this case, meal periods), "as a whole," does not apply. *Id.* at 236.

Further, where, as here, the Section 512(e) exemption applies, a pleaded state law meal period claim is preempted by Section 301. *See Rodriguez, Inc.*, *supra*, 2022 WL 161892, *4 (*citing Curtis*, 913 F.3d at 1155-56); *accord Giles*, *supra*, 2022 WL 3370793, *4-5; *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1098 (N.D. Cal. 2014) ("So if Section 512(e) applies, then 512(a) does *not* apply, and plaintiff's claimed right to meal periods cannot be said to be based on state law.") (emphasis in original).

### D. Plaintiff's Second Cause Of Action (Minimum Wages) Is Preempted Under *Curtis* Step One and Step Two.

Plaintiff's First Cause of Action is preempted because the claim arises out of Plaintiff's preempted overtime claim and requires interpretation of the CBA. Even if it were not preempted, the Court would have supplemental jurisdiction over this claim.

Plaintiff alleges that "DEFENDANT maintained a uniform wage practice of paying PLAINTIFF and the members of the CALIFORNIA CLASS without regard to the correct amount of time they work." (Compl., ¶ 85.) Additionally, Plaintiff combines his Minimum Wage and Overtime claims in the complaint when he alleges that PG&E did not pay for off the clock work. (Compl., ¶¶ 22-30.) Plaintiff does not allege that he ever worked or was scheduled for a day as to which overtime obligations would not attach *if* Plaintiff had worked more time than that for which he was paid (*e.g.*, Plaintiff does not allege that he ever worked less than 8 hours in a day). In fact, Plaintiff states that he and other members of the putative class "typically worked over forty (40) hours in a workweek, and more than eight (8) hours per day. . . ." (Compl., ¶ 28.) In all respects, Plaintiff mixes together the alleged factual bases for the minimum wage and overtime claims, without differentiation. (Compl., *passim*.) Collectively, the claims in Paragraphs 80-93 of the Complaint, and the lack of any additional supporting detail in the Second Cause of Action, make it clear that Plaintiff's so-called "minimum wage" claim is inseparable from Plaintiff's overtime claim. Plaintiff's Second Cause of Action,

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT    15    CASE NO.

lacking any independent life is preempted for the same reason as Plaintiff's overtime claim. *See Chavez v. Smurfit Kappa N. Am. LLC,* 2018 WL 8642837, *4 (C.D. Cal Oct 17, 2018) (holding that a minimum wage claim, that could only arise out of plaintiff's preempted overtime claim, was also preempted under section 301); *and see also Rodriguez*, *supra*, 2022 WL 161892, *6 ("because the claim for unpaid minimum wages substantially depends on an analysis of the CBA, the LMRA preempts the claim."); *Giles*, *supra*, 2022 WL 3370793, *6; *Mellon*, *supra,* 625 F. Supp. 3d 1007, 1014 - 1016, at 1014.

In the alternative, Plaintiff's Second Cause of Action is preempted under *Curtis* Step Two because interpretation of the various provisions of the CBA requiring pay for all hours worked is required to resolve the minimum wage claim. *See Rodriguez*, *supra*, 2022 WL 161892, at *5 (finding, where plaintiff alleged "defendant failed to pay minimum wages for off-the-clock activity," resolution of minimum wage claim required, "[a]t minimum, ... interpretation of CBA terms such as 'actual hours worked' and 'show up expenses'"); *Giles*, *supra*, 2022 WL 3370793, at *6 (minimum wage claim preempted because resolving that claim would require interpretation of contractual terms "actual time worked" and "show-up pay"); *Mellon*, *supra*, 625 F. Supp. 3d 1007, 1014-1016 1014 (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks.")

Within his Second Cause of Action, Plaintiff again alleges that PG&E violated Labor Code Section 204 by failing to timely pay its employees for all hours worked. (Compl., ¶ 82.) However, as discussed above in Section V(B), Plaintiff's Section 204 claim is preempted under section 301.

In any event, if the Court finds that any portion of Plaintiff's Second Cause of Action is not preempted, the Court has supplemental jurisdiction because any non-preempted claims form part of the same case or controversy as the preempted claims. *See Gay v. Pac Steel Grp*, 2021 WL 2917095, *3 (N.D. Cal Jun. 15, 2021) (finding supplemental jurisdiction for minimum wages, unpaid wages, non-compliant wage statements, and other claims when overtime, meal period, and rest period claims were preempted).

E.   **Plaintiff's Derivative Waiting Time Penalty, UCL, and Wage Statement Claims (Sixth, First, Seventh Causes Of Action) Are Preempted Under *Curtis* Step One.**

Plaintiff's Sixth Cause of Action (waiting time penalties under Labor Code Sections 201-203), First Cause of Action (restitution under UCL), and Seventh Cause of Action (wage statements) are all, in whole or in part, derivative of Plaintiff's claims that are preempted under Section 301 for the reasons described above. (Compl., ¶¶ 19, 65, 118 [all derivative claims are based on prior allegations in the Complaint].)

All of these derivative claims are preempted under Section 301 for this reason. *Giles*, *supra*, 2022 WL 3370793, *6-7; *Rodriguez*, *supra,* 2022 WL 161892, *6; *Mellon*, *supra,* 625 F. Supp. 3d 1007, 1014 ; *Jimenez v. Young's Mkt. C*o., 2021 WL 5999082, *13 (N.D. Cal. Dec. 20, 2021); *Vasquez v. Packaging Corp. of Am.*, 2019 WL 4543106, *4 (C.D. Cal. Jun. 7, 2019).

Furthermore, Plaintiff's Sixth Cause of Action would be preempted under Section 301 in any event, under Step Two of the *Curtis* analysis, because this claim requires the interpretation and application of detailed provisions regarding the timely payment of wages, payment of overtime, and provision of meal periods in Sections 12.1, 12.2, 13.1, and 13.2 of the CBA. *See Curtis*, 913 F.3d at 1153. But the Step Two analysis is unnecessary where, as here, preemption under Step One is so clear.

F.   **Plaintiff's Labor Code Section 2802 Claim Is Preempted (Eighth Cause of Action) Under *Curtis* Step Two.**

Here, Plaintiff vaguely alleges PG&E violated Labor Code Section 2802 as follows: "During Plaintiff's employment, Defendant failed to reimburse Plaintiff for necessary business expenses, including the use of their personal cell phones and personal home internet." (Compl., ¶ 133).

Section 301 preemption applies to Plaintiff's Eighth Cause of Action because this "state law right is substantially dependent on analysis of the CBA." *See Curtis*, 913 F.3d at 1153. The case law provides ample guidance for a situation such as this, where a union-represented plaintiff makes broad and vague expense reimbursement allegations, and the applicable CBA contains a raft of relevant expense reimbursement provisions. *See, e.g., Rodriguez*, *supra* 2022 WL 161892, *4-5 (Section 301 preemption applied to expense reimbursement claims for, among other things, cell phone, mileage, and gas costs, and reasoning:

> "[T]he failure to pay business expenses … substantially depends on an analysis of the CBA. The plaintiff claims an entitlement to

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT     17     CASE NO.

reimbursement for purchasing mandatory work uniforms, safety equipment, laundering uniforms, mileage and gas costs, use of cell phones, and tools. The CBA provides for reimbursable expenses for mileage and gas, and the terms about mileage and routes require analysis and interpretation. Similarly, … it provides for workers to furnish some equipment and the employer to provide housing for certain equipment and safety equipment. It describes employees' entitlement to protective clothing and equipment if they work with caustic substances. Resolution of the claim tuns on the analysis of the CBA and interpretation of its terms, and the LMRA thus preempts these claims that are substantially dependent on analysis of the CBA.");

*Linebarger v. Graphic Packaging International, LLC*, 2020 WL 1934958, *6 (C.D. Cal. Apr. 22, 2020) (finding Section 301 preemption of cell phone expense reimbursement claim where CBA included language regarding the purchase of tools necessary to complete the work); *Gay v. Pac Steel Group,* 2023 U.S. Dist. LEXIS at *20 (N.D. Cal Sept 15, 2023) (applying LMRA 301 preemption and holding that the CBA would need to be interpreted in order to decide [Plaintiff's] unreimbursed business expense claim).

In this regard, the CBA contains numerous provisions that provide expense reimbursement: Section 15.1 requires the Company to reimburse employees for moving costs; Section 15.2 requires the Company to reimburse employees for transportation costs, and Section 15.3 requires the Company to reimburse employees for interview costs. Additionally, letter agreement 21-01-01 and letter agreement 22-22 requires the Company to reimburse employees for home internet and cell phone costs. (*see* Section IV.B.4, *supra*). As in *Rodriguez* and *Linebarger*, this claim is preempted by Section 301 because the resolution of Plaintiff's expense reimbursement claims requires interpreting and applying the various CBA provisions regarding expense reimbursement.

Further, as discussed in Section H below, the Court also has supplemental jurisdiction over the Plaintiff's eighth cause of action because the Plaintiff's expense reimbursement claim forms part of the same controversy as the preempted claims.

### G. Plaintiff's Paid Sick Leave Allegation is Preempted By Section 301

While it is not a distinct cause of action, Plaintiff alleges that he was not provided paid sick leave. (Compl., ¶¶ 34, 48, and 49.) Nonetheless, Plaintiff does not have a valid paid sick leave claim under state law because the Labor Code Section 245.5(a)(1) applies. Section 245.5(a)(1)'s definition of "employee" does not include:

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT      18      CASE NO.

> "An employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for paid sick days or a paid leave or paid time off policy that permits the use of sick days for those employees, final and binding arbitration of disputes concerning the application of its paid sick days provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate."

The CBA contains provisions that provide for Paid Sick leave under Title 7. (*See* Ledbetter Decl., ¶ 16. Ex 4. pp. 9-12.)

The CBA provides for a range of wages, hours, and working conditions. (*See* provisions quoted in Sections IV.B.1, IV.B.2, *supra*.) Furthermore, the CBA expressly provides for paid sick leave for employees at a rate not less than 30 percent more than the state minimum wage rate because it provides employees with at least one year of service sick-leave pay for a total of 80 hours per calendar year as the ratio of the straight time hours worked in a year to 2,080 hours, and it provides employees with less than one year of service 24 hours of paid sick leave. (*See* Section IV.B.5.) Finally, the CBA grievance procedure covers all interpretations of the agreement which include the application of the CBA's sick leave provision. (*See* Section IV.B.3.) Accordingly, the Section 245.5(a)(1) exemption clearly applies here.

Where, as here, the 245.5(a)(1) exemption applies to a union-represented plaintiff, the right to paid sick leave 'exists solely as a result of the CBA,' and therefore is preempted under § 301." *Curtis*, 913 F.3d at 1154; *accord, e.g., Giles*, *supra,* 2022 WL 3370793, *4; *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, 2022 U.S. Dist. LEXIS 42113, *11 (C.D. Cal. Mar. 8, 2022); *Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, *4 (N.D. Cal. Jan. 18, 2022) (*citing Curtis*, 913 F.3d at 1153-55); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203-04 (C.D. Cal. 2015) (same).

**H.   The Court Has Supplemental Jurisdiction Over Plaintiff's Remaining Claims**

If this Court finds that any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy. *See Giles*, *supra,* 2022 WL 3370793, *6 (court exercised

supplemental jurisdiction over *non*-preempted rest break claim by non-construction industry plaintiff, where overtime, meal break and minimum wage claims were preempted by Section 301); *Jimenez, supra,* 2021 WL 5999082, at *21 (exercising supplement jurisdiction because the plaintiffs' remaining claims of minimum wage, rest period, and unpaid wages "arose from the same working conditions and relationship" with the defendants during the same period as the plaintiffs' overtime and meal period claims).

## VI. CONCLUSION

For the reasons provided herein, Defendant hereby removes this action from the California Superior Court, in and for the County of Sacramento, to the United States District Court, Eastern District of California. Defendant requests that this Court retain jurisdiction for all further proceedings.

Dated: November 2, 2023                                    LITTLER MENDELSON, P.C.

*/s/ Harman Deol*
JOSHUA D. KIENITZ
COURTNEY CHAMBERS
HARMAN S. DEOL

Attorneys for Defendant
PACIFIC GAS AND ELECTRIC COMPANY

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT                     20                                CASE NO.